■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v THOMAS DIGGS, True Name YEMERIAH YISRAEL, Respondent. — Order, Supreme Court, New York County (Kenneth Shorter, J.), entered April 14, 1983, which granted the defendant's motion to set aside a jury verdict that convicted him of robbery in the second degree and dismissed the indictment, is unanimously reversed, on the law, the motion is denied, the indictment and the verdict are reinstated, the defendant is directed to surrender, and the matter is remanded for sentence.

Subsequent to leaving his sister's apartment on West 72nd Street in Manhattan, at approximately 12:30 A.M. on November 27, 1981, Ben Zion Tartak (Tartak), a 21-year-old student, boarded a No. 1 IRT local subway train to go back home to Brooklyn. The subway car Tartak entered had good lighting and contained only one other passenger. During the course of the ride, as Tartak was reading, he heard someone speaking to him but he ignored this interruption, until a tapping on his shoulder caused him to look up. Even though he raised his head and the defendant said, "Hey, my friend is talking to you", Tartak did not reply. Within a couple of minutes, the defendant and his companion left. However, in a short time, they returned. Now, the defendant and his accomplice seated themselves on either side of Tartak and began searching him. Tartak stared at the defendant. In response, defendant said "stop staring at me" and punched the victim across his right jaw. Defendant took Tartak's light-blue snorkel coat, while his accomplice removed Tartak's watch. Before running off the train at the Chambers Street stop, one of the robbers warned Tartak not to follow them.

Waiting a few moments, Tartak then left the train, which had been taken out of service at Chambers Street. Promptly, at that station, Tartak first informed a token clerk, and thereafter the police, of the details of the robbery.

By 1:00 A.M., on another train in a different part of the Chambers Street station, Transit Police Officer Joseph Tuff (Tuff) had recovered a light-blue ski coat from defendant, which he was wearing, and a watch from a companion of the defendant. Tuff immediately vouchered both items in transit police headquarters.

Tartak made a lineup identification of the defendant, as one of the persons who had robbed him.

Just prior to opening statements at defendant's trial, the prosecutor advised defendant's counsel that when the police retrieved the vouchered items, mentioned *supra,* they did not find in the plastic bag the same light-blue ski coat that they had taken from the defendant on the night of the incident. At the trial Tartak identified defendant again and he identified the vouchered watch as his. The jury convicted defendant of robbery in the second degree.

Trial Term granted defendant's motion to set aside the verdict and dismissed the indictment, upon the basis that the wrong coat in the plastic bag was exculpatory and constituted *Brady* material (*Brady v Maryland,* 373 US 83) which the People had failed to disclose in timely fashion.

We find that Trial Term erred. The issue before us in this case is not a question of *Brady* material, but, rather, the critical issue is whether the defendant forcibly took the victim's coat, and, through the theory of accessorial liability (Penal Law, § 20.00; see, also, *People v Jackson,* 44 NY2d 935, 937), also took the victim's watch. The defendant's guilt is not based on the recovery of the stolen property, but is based on the positive identification of defendant by Tartak, who observed defendant in a well-lighted subway car and, further, identified him in a lineup. Concur — Sullivan, J. P., Ross, Carro, Bloom and Kassal, JJ.